IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re:

| | | |
|---|---|---|
| **GRIMM BROTHERS REALTY CO.,** | : | CHAPTER 11 |
| | : | |
| Debtor | : | Bankruptcy No. 11-13358 |

## DISCLOSURE STATEMENT

**I.    INTRODUCTION**

This is the disclosure statement (the "Disclosure Statement") of Grimm Brothers Realty Company (the "Debtor").  This Disclosure Statement contains information about the Debtor and describes the Chapter 11 Plan of Reorganization (the "Plan") filed by the Debtor on October 27, 2011.  A full copy of the Plan is provided with this Disclosure Statement.  ***Your rights may be affected.  You should read the Plan and this Disclosure Statement carefully and discuss them with your attorney.  If you do not have an attorney, you may wish to consult one.***

    **A.   Content of This Disclosure Statement.**

This Disclosure Statement describes:

- The Debtor and significant events during the bankruptcy case;

- How the Plan proposes to treat claims or equity interests of the type you hold (*i.e.*, what you will receive on your claim or equity interest if the plan is confirmed);

- Who can vote on or object to the Plan;

- What factors the Bankruptcy Court (the "Court") will consider when deciding whether to confirm the Plan;

- Why Grimm Brothers Realty Company believes the Plan is feasible, and how the treatment of your claim or equity interest under the Plan compares to what you would receive on your claim or equity interest in liquidation; and
- The effect of confirmation of the Plan.

Be sure to read the Plan as well as the Disclosure Statement. Before being circulated, the Disclosure Statement must be approved by the Bankruptcy Court as providing adequate information about the Debtor and the Plan to parties receiving it. This Disclosure Statement describes the Plan, but it is the Plan itself that will, if confirmed, establish your rights.

**B. Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing.**

The Court has not yet confirmed the Plan described in this Disclosure Statement. This section describes the procedures pursuant to which the Plan will or will not be confirmed.

**1. Time and Place of the Hearing to Confirm the Plan.**

The Debtor is requesting that the Court conditionally approve this Disclosure Statement without a hearing, but allow time for interested parties to register any objections. The hearing at which the Court will determine whether to confirm the Plan will take place on a date to be set by the Court.

**2. Deadline For Voting to Accept or Reject the Plan.**

Once the Disclosure Statement is approved by the Court, if you are entitled to vote to accept or reject the Plan, you will have the opportunity to vote on a ballot to be provided to you with instructions on voting. *See* Section III below for a discussion of voting eligibility requirements.

Your ballot must be received by the deadline imposed by the Court or it will not be counted.

### 3. Deadline For Objecting to the Adequacy of this Disclosure Statement and Confirmation of the Plan.

Objections to this Disclosure Statement or to the confirmation of the Plan must be filed with the Court and served upon the Debtor by the date to be established by the Court.

### 4. Identity of Person to Contact for More Information.

If you want additional information about the Plan, you should contact:

> William H. Hall, IV, Esquire
> Regional Bankruptcy Center of Southeastern PA, P.C.
> 101 West Chester Pike, Suite 1A
> Havertown, PA  19083
> (610) 446-6800

### C. Disclaimer.

*The Debtor is requesting the Court to conditionally approve this Disclosure Statement as containing adequate information to enable parties affected by the Plan to make an informed judgment about its terms. If the Court conditionally approves this Disclosure Statement, the Court will not have yet determined whether the Plan meets the legal requirements for confirmation, and the fact that the Court may have approved this Disclosure Statement will not constitute an endorsement of the Plan by the Court, or a recommendation that it be accepted. If this Disclosure Statement is conditionally approved, the Court's approval of this Disclosure Statement will be subject to final approval at the hearing on confirmation of the Plan. Objections to the adequacy of this Disclosure Statement may be filed until a date to be established by the Court.*

II.     **BACKGROUND**

    A.  **The Debtor, the Filing of This Case, and Debtor's Counsel.**

On April 27, 2011, GRIMM BROTHERS REALTY CO., a Pennsylvania corporation ("the Debtor"), filed this corporate voluntary Chapter 11 bankruptcy case in this Court. Since the commencement of this case, the Debtor has functioned as a Debtor-in-Possession under the Bankruptcy Code, and opened a new Debtor-in-Possession bank account as soon as possible after filing the case, closing any former bank accounts of Grimm Brothers Realty Company. The Debtor recognizes and acknowledges that all fees must be paid by the effective date of the Plan and that the company has a continuing obligation to file reports and pay such fees as are requested pending the closing of this case.

A motion to appoint Roger V. Ashodian and William H. Hall IV as the Debtor's counsel and to pay them a retainer of $7,500.00 was filed on April 28, 2011, and was granted effective as of the date of filing by Order entered May 9, 2011.

    B.  **The Debtor's Operations.**

The Debtor owns 6 properties[1] and manages one additional property owned by a principal of the Debtor[2] in Norristown, Pennsylvania (hereinafter "the Properties"), which the Debtor operates as a landlord. These properties collectively contain both residential and commercial space. The Debtor is wholly owned by Mr. Kevin Grimm, and is operated by Mr. Gary Grimm, whose is the sole officer of the company. Mr. Gary Grimm possesses decades of experience in all aspects of real property management.

---

[1] 202 Jacoby Street, Norristown, PA 19401, Parcel No. 13-00-17032-00-1; 837 Swede Street, Norristown, PA 19401, Parcel No. 13-00-36448-00-07; 839 Swede Street, Norristown, PA 19401, Parcel No. 13-00-36452-00-03; 901 Swede Street, Norristown, PA 19401, Parcel No. 13-00-36456-00-8; 857 Cherry Street, Norristown, PA 19401, Parcel No. 13-00-08228-00-3; 636 Cherry Street, Norristown, PA 19401, Parcel No. 13-00-07748-00-6.

C. **Events Leading to the Filing of This Case.**

Although the Properties have significant historic value that is attractive to prospective tenants, some of the amenities have become outdated for current tastes. The Debtor is in the process of completing remodeling to update the units in order to return the Properties to full rental capacity and to gradually increase rents to current market rates for units with modern amenities. The Debtor's financial difficulties are also attributable to its inability to obtain a use & occupancy permit for one of the Properties, at 837 Swede Street, which currently has no tenants despite having the potential to generate the most revenue of any of the Properties. With the loss of rental income caused by vacancies, the Debtor began to lose money.

The Debtor has a long-standing dispute regarding municipal waste and other municipal taxes and fees. These disputes increased financial pressure on the Debtor at a time when the Debtor was experiencing a decrease in revenues caused by vacancies in its rental units. The Debtor filed its petition in the instant bankruptcy case in an effort to reorganize its financial affairs, to develop an orderly process for addressing its liabilities, and thereby to return to profitability.

D. **Events Following the Petition Date.**

Upon filing, the Debtor experienced a large and unexpected number of vacancies and tenants refusing to make payment when tenants learned of the bankruptcy filing. At full capacity, the Debtor's monthly gross revenues would be approximately $21,500.00 (*see* Exhibit A). With the recent vacancies, the Debtor's monthly gross revenues have ranged from a low of $9,850.00 to a high of $15,446.00, but the trend after an initial significant dip in income has been upward.

---

[2] 337 Marshal Street, Norristown, PA 19401

5

This loss of revenue has made it difficult for the Debtor to gauge its prospects for future rental income with sufficient certainty to propose a plan to reorganize its financial affairs in an efficient and timely manner.

Claims have been filed by the Internal Revenue Service ("the IRS"), the Pennsylvania Department of Revenue ("PADOR"), PNC Bank, the Department of Labor & Industry, Commonwealth of Pennsylvania, the Montgomery County Tax Claim Bureau, and the State Workers' Insurance Fund. A bar date for claims has been requested to be set on November 28, 2011.

Over the next several months, the Debtor believes that gross revenues will increase as the Properties approach full capacity. There are five (5) vacant units undergoing renovation that are projected to be ready for occupancy by November 1, 2011. There are another two (2) vacant units undergoing renovation that are projected to be ready for occupancy by December 1, 2011. Finally, there are six (6) vacant units at 837 Swede Street that have been vacant for over a decade due to the local municipality's unwillingness to grant a use & occupancy permit for the property. The Debtor intends to obtain the permit by February, 2012. Once these vacancies are filled, the Debtor will be at or very near full capacity, and will generate sufficient revenue to maintain regular operations and fund the Plan.

### III.  SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

**A. What is the Purpose of the Plan of Reorganization?**

As required by the Code, the Plan places claims and equity interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of claims

6

or equity interests is impaired or unimpaired. If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.

### B. Unclassified Claims

Certain types of claims are automatically entitled to specific treatment under the Code. They are not considered impaired, and holders of such claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. As such, the Plan Proponent has *not* placed the following claims in any class:

#### 1. *Administrative Expenses*.

Administrative expenses are costs or expenses of administering the Debtor=s chapter 11 case which are allowed under § 507(a)(2) of the Code. Administrative expenses also include the value of any goods sold to the Debtor in the ordinary course of business and received within 20 days before the date of the bankruptcy petition. The Code requires that all administrative expenses be paid on the effective date of the Plan, unless a particular claimant agrees to a different treatment.

#### 2. *Priority Tax Claims*.

Priority tax claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code. Unless the holder of such a § 507(a)(8) priority tax claim agrees otherwise, it must receive the present value of such claim, in regular installments paid over a period not exceeding 5 years from the order of relief.

C. **Classes of Claims and Equity Interests**

The classes of claims are set forth in the Plan, along with the proposed treatment that they will receive under the Plan.

IV.     **CONFIRMATION REQUIREMENTS AND PROCEDURES**

To be confirmable, the Plan must meet the requirements listed in §§1129(a) or (b) of the Bankruptcy Code. These include the requirements that: the Plan must be proposed in good faith; at least one impaired class of claims must accept the plan, without counting votes of insiders; the Plan must distribute to each creditor and equity interest holder at least as much as the creditor or equity interest holder would receive in a chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the Plan; and the Plan must be feasible. These requirements are not the only requirements listed in §1129, and they are not the only requirements for confirmation.

As a creditor of the Debtor, your vote is important. The Plan may be confirmed by the Court if it is accepted by the holders of two-thirds (2/3) of the amount of the claims in each of the impaired classes, by the holders of more than one-half (1/2) of the number of the claims in each of the impaired classes, or by the holders of two-thirds (2/3) of the amount of interest in each impaired class of equity interest holders voting on the Plan. Creditors may vote on the Plan by filling out and mailing the accompanying ballot to the Debtor's counsel. In the event the requisite acceptances are not obtained, the Court may nevertheless confirm the Plan if the Court finds that the Plan accords fair and equitable treatment under all of the circumstances of the case and existing economic circumstances to the class or classes rejecting the Plan.

Section 1125 of the Bankruptcy Code requires that debtors provide a Disclosure

Statement to all creditors and equity security holders in order to provide to the holders of all such claims and interests adequate information about the debtor and the Plan, so that they may make an informed judgment with respect to the merits of the Plan.

This Disclosure Statement does not purport to be a complete description of the Plan, the financial status of the Debtor, the applicable provisions of the Bankruptcy Code, or other matters that may be deemed significant by certain creditors or parties in interest.  This Disclosure Statement is an attempt to set forth, in reasonable detail, information that will enable a creditor to make an informed judgment with respect to the Plan.  Approval by the Bankruptcy Court of this Disclosure Statement is not an approval of the Plan.  The Debtors will request confirmation of the Plan at an appropriate hearing after the Disclosure Statement has been approved by the Court and transmitted to all creditors with ballots for voting.  No representations concerning the Debtor, its assets, or its financial condition are authorized by the Debtor other than as set forth in this Disclosure Statement.

Enclosed with this Disclosure Statement are the following:

1. A copy of the Plan, and

2. A ballot for accept or rejecting the Plan.

The purpose of this Disclosure Statement is to provide creditors and other parties in interest with sufficient information about the Debtors and the plan to permit them to intelligently cast a ballot on whether to accept or reject the plan.  Any representations or inducements made to secure your acceptance which are other than as contained in this Disclosure Statement should not be relied upon by you in arriving at your decision and any such additional representation and inducement should be reported to counsel for the Debtor or the United States Trustee, who in turn shall

deliver such information to the Bankruptcy Court in such action as may be deemed appropriate.

The information contained in this Disclosure Statement has not been the subject of a certified audit. The representations and projections made are based upon the education and business experience, history and acumen of the Debtor's officers and employees. However, it should be borne in mind that economic circumstances and "value" are subject to great fluctuation and difference of opinion and projections for the future, and, while based upon the experience of the Debtor, are only projections and are not guarantees.

Except for claimants holding only administrative or priority tax claims, and those who are not entitled to vote as described below, every holder of a claim is entitled to vote to accept or reject the Plan, provided that either: (a) its claim has been scheduled by the Debtor and such claim is not scheduled as a disputed, contingent or un-liquidated claim, or (b) it has filed a Proof of Claim on or before the bar date to be set by the Court for filing Proofs of Claim, unless its claim has been disallowed for voting purposes by the Bankruptcy Court. "Claim" is defined in the Plan as "a claim against the Debtor within the meaning of Section 101(4) of the Bankruptcy Code."

Certain claimants are not entitled to vote on the plan. One category is that of Administrative and Priority Claims. Claimants holding only administrative claims and/or priority claims are not entitled to vote on the Plan because Section 1123(a)(1) of the Code does not require that such claims be designated in a Class and because the Plan provides for the full payment of such claimants under terms which not only satisfy, but are more favorable to such claimants than the requirements of Sections 1129(a)(9)(A) and (C) of the Code. Sections 1122(a) and 1123(a)(1) of the Code require that the Plan designate classes of claims, other than

10

administrative claims and priority claims, and that each Class consist of substantially similar claims.

Another category of claims not entitled to vote are Unimpaired Claims. Claimants holding claims in a Class which is not impaired (as discussed below) are not entitled to vote on the Plan because pursuant to Section 1126(f) of the Code a Class that is not impaired under the Plan, and each claimant in such Class, is conclusively presumed to have accepted the Plan. As a general matter, under Section 1124 of the Code, a Class of claims is impaired unless the rights of the claimants in such Class are not altered by the Plan (with exception of certain rights of claimants to receive accelerated payment of their claims and certain rights of Debtor to cure defaults) or unless the Plan provides, that, on the effective date, each claimant in such Class shall receive, on account of its claim, cash equal to the allowed amount of such claim.

The Plan is deemed accepted by a Class of creditors when it is approved by creditors who hold at least two-thirds of the dollar amount, and who comprise more than one-half in number of, the allowed claims of such Class that are held by creditors and who in fact vote. An abstention by a creditor will not count toward either acceptance or rejection of the Plan.

The Debtor recommends that each voter ACCEPT the Plan. IN ORDER FOR YOUR VOTE TO COUNT, YOUR BALLOT MUST BE COMPLETED AND RECEIVED AT THE ADDRESS STATED ON THE BALLOT (WHICH IS ALSO SET FORTH BELOW) ON OR BEFORE the date established by the Court. Telefaxed Ballots are acceptable if followed up with a hard copy within three days to:

Roger V. Ashodian
Regional Bankruptcy Center of Southeastern PA, P.C.
101 West Chester Pike, Suite 1A
Havertown, PA  19083                                              FAX  (610) 446-6808

Even though a creditor may choose not to vote or may vote against the Plan, the creditor will be bound by the terms and treatment set forth in the Plan if the Plan is accepted by the requisite majorities in each Class of creditors and is confirmed by the Court. Allowance of a claim for voting purposes does not necessarily mean that the claim will be allowed for purposes of distribution under the terms of the Plan. Any claim to which an objection has been or shall be made will be allowed for purposes of distribution only after determination by the Court. Such determination may be made after the Plan is confirmed.

Should you have an objection to confirmation of the Plan, it must be filed, in writing, with the Bankruptcy Court and served on counsel for the Debtor, on or before the date established by the Court. A hearing to consider confirmation of the Plan will be scheduled by the Court, before the Honorable Magdeline D. Coleman, United Bankruptcy Judge, United States Bankruptcy Court, Courtroom No. 5, 900 Market Street, Philadelphia, Pennsylvania 19107.

The Debtor is seeking confirmation of the Plan under §1129(a) of the Bankruptcy Code. Confirmation under §1129(a) is dependent upon a finding of the Bankruptcy Court that a number of requirements have been met. One of these requirements under §1129(a) is that each impaired class of claims must have accepted the Plan. Accordingly, the Plan cannot be confirmed under §1129(a) unless accepted by each impaired class of claims. While the Debtor intends to seek confirmation of the Plan under §1129(a), the Debtor reserves the right to seek confirmation of the Plan under §1129(b), notwithstanding non-acceptance by one or more Classes of impaired claims.

Under §1129(b)(1) of the Code, the Court may confirm the Plan even if it has not been accepted by one or more impaired Classes of claims, provided that the Plan does not discriminate

unfairly, is fair and equitable with respect to each impaired Class of claims that has not accepted the Plan, and is accepted by at least one impaired class.

In order for the Plan to be fair and equitable with respect to an impaired Class of secured claims, §1129(b)(2)(A) of the Code requires that the Plan provide for each claimant in such Class:  (a) to receive payments over time which, in the aggregate, total at least the allowed amount of such claimant's Claim, and which have a present value, as of the effective date of the Plan, at least equal to the value of such claimant's interest in the Debtor's property encumbered by such claimant's lien(s); and (b) shall retain such lien(s) in order to secure such payments.

In order for the Plan to be fair and equitable with respect to an impaired Class of unsecured claims, §1129(b)(2)(B) of the Code requires, in certain cases, that the Plan comply with the so-called "absolute priority rule" by providing either:  (a) that each claimant in such Class shall receive on account of its claim payments which have a present value, as of the effective date of the Plan, equal to the allowed amount of such claim; or (b) that no claimant or holder of an interest in the debtor's property that is junior to the claims of such impaired Class will receive or retain under the Plan on account of such junior claim or interest any property until the unsecured creditors are paid in full.

> THE ACCURACY OF THE INFORMATION, PARTICULARLY FINANCIAL INFORMATION, SUBMITTED WITH THIS DISCLOSURE STATEMENT IS DEPENDENT UPON INFORMATION OBTAINED FROM THE DEBTOR AND/OR ITS AUTHORIZED REPRESENTATIVES.  WHILE EVERY EFFORT HAS BEEN MADE TO PROVIDE THE MOST ACCURATE INFORMATION AVAILABLE, THE DEBTOR IS UNABLE TO WARRANT OR REPRESENT THAT ALL INFORMATION IS WITHOUT INACCURACY.  NO KNOWN INACCURACIES ARE INCLUDED.  FURTHER, MUCH OF THE INFORMATION CONTAINED HEREIN MAY CONSIST IN WHOLE OR IN PART OF DETERMINATIONS OF THE VALUE OF ASSETS, WHICH IS SUBJECT TO THE DIFFERENCES OF OPINION.

> WHILE EVERY EFFORT HAS BEEN MADE TO ENSURE THAT THE ASSUMPTIONS ARE VALID AND THAT THE STATEMENTS MADE HEREIN ARE AS ACCURATE AS CAN BE MADE UNDER THE CIRCUMSTANCES, NEITHER THE DEBTOR NOR ANY ACCOUNTANT OR APPRAISER UNDERTAKE TO CERTIFY OR WARRANT THE ABSOLUTE ACCURACY OF THE FINANCIAL STATEMENTS OR PROJECTIONS.

### V.  THE PLAN OF REORGANIZATION

A copy of the Plan of Reorganization is provided herewith. If a copy is not provided, it can be obtained by contacting the Debtor's counsel at the address stated above.

### VI.  LIQUIDATION ANALYSIS

The only assets of the Debtor which it can sell are the Properties. The Debtor believes the Properties to have an aggregate value of $1,203,000.00, although the ability to realize this value in a sale in the current economy is not certain. A liquidation of the Properties would not likely result in sufficient funds to pay all filed and anticipated claims. The Debtor believes that the Properties' vacant space can be leased to provide income sufficient to satisfy at least as much of the claims as would be satisfied following a liquidation of the Properties.

### VII.  PENDING AND POSSIBLE FUTURE LITIGATION

At the time the petition was filed in the instant case, the Debtor had several suits pending against it. These suits involved payment to the local municipality for taxes. The Debtor also had an administrative worker's compensation claim pending. The Debtor has classified these claims in its Chapter 11 Plan, and anticipates satisfying these claims during the course of its Chapter 11 Plan.

In the normal course of its operations, the Debtor often brings actions in the local state

courts for the non-payment of rent. The Debtor has several such cases currently pending.

## VIII. ANALYSIS OF THE LIENS RECORDED WITH REGARD TO THE DEBTOR'S PROPERTIES

### A. <u>Liens Associated with Creditors Listed in the Debtor's Schedules.</u>

In its "Schedule D – Creditors Holding Secured Claims," the Debtor lists the following as entities recognized as claiming to hold a lien with regard to the Debtor's properties and claiming to be owed payment in order to satisfy the lien:

| PROPERTY | ENTITY HOLDING LIEN |
|---|---|
| 202 Jacoby Street | Commonwealth Insurance Company |
| 202 Jacoby Street | M&T Bank |
| 202 Jacoby Street | Norristown Municipal Waste Authority |
| 636 Cherry Street | M&T Bank |
| 636 Cherry Street | Norristown Municipal Waste Authority |
| 857 Cherry Street | M&T Bank |
| 857 Cherry Street | Norristown Municipal Waste Authority |
| 837 Swede Street | PNC Bank, N.A. |
| 837 Swede Street | Norristown Municipal Waste Authority |
| 839 Swede Street | PNC Bank, N.A. |
| 839 Swede Street | Norristown Municipal Waste Authority |
| 839 Swede Street | Norristown Area School District |
| 901 Swede Street | Commonwealth Insurance Company |
| 901 Swede Street | Norristown Municipal Waste Authority |

### B. <u>Liens Not Associated with Creditors Listed in the Debtor's Schedules.</u>

The Debtor further recognizes that the recorder of deeds in Montgomery County, PA, where its properties are located, has recorded liens against its properties that are recorded as held by entities other than those listed in the Debtor's Schedules. Most of these liens were recorded over a decade ago (some two decades) and are listed as currently held by institutions that have not demanded payment from the Debtor for years. The Debtor believes that these liens can

largely be placed into two categories: (1) liens transferred to Creditors listed in the Debtor's schedules for which no transfer was ever recorded, and (2) liens arising from judgment or some other event not related to a loan. These liens are as follows:

| PROPERTY | ENTITY HOLDING LIEN |
|---|---|
| 202 Jacoby Street | First Indemnity American Insurance Company |
| 202 Jacoby Street | National Bank of the Main Line |
| 636 Cherry Street | National Bank of the Main Line |
| 636 Cherry Street | Southeast National Bank of Pennsylvania |
| 857 Cherry Street | First Indemnity American Insurance Company |
| 857 Cherry Street | National Bank of the Main Line |
| 857 Cherry Street | Southeast National Bank of Pennsylvania |
| 857 Cherry Street | Frankford Bank, N.A. |
| 837 Swede Street | Continental Bank |
| 839 Swede Street | Fortune Assurance Company |
| 901 Swede Street | Gambrone Brothers Realty Company |
| 901 Swede Street | Daryl A. Faggioli |

With respect to the liens recorded by Fortune Assurance Company and Southeast National Bank of Pennsylvania, the Debtor has satisfaction pieces that apparently have not been recorded or, at the very least, not properly recorded with the Recorder of Deeds. With regard to those liens transferred to Creditors listed in the Debtor's schedules for which no transfer was ever recorded, the Debtor will satisfy the claims of those Creditors as outline in the Plan of Reorganization. With regard to those liens arising from judgment or some other event not related to a loan, the Debtor is not aware of any demand for payment in the last several years, and it is the Debtor's intention to negotiate a satisfaction or sale of the respective liens to the Debtor.

## IX. ANALYSIS OF DEBTOR'S ABILITY TO MAKE PAYMENTS UNDER THE SECOND AMENDED PLAN OF REORGANIZATION

The Debtor's ability to adequately fund its Plan of Reorganization is contingent upon its

ability to fill current vacancies in its rental units and continue to keep its properties at or near full capacity. As stated more fully above, the Debtor's gross monthly revenues are approximately $21,500.00 when its units are at full capacity. Over the several months since this case was filed, the Debtor's expenses have been $13,206.10. The Debtor projects that its expenses will remain at approximately this level as revenues increase due to increased rentals but decrease later as the Debtor completes renovations on its units. Once at full capacity, the Debtor projects that its available net revenues will enable it to both maintain ongoing Plan payments to the creditors under the Plan and continue to make capital improvements to maintain the Properties.

        Respectfully submitted,
REGIONAL BANKRUPTCY CENTER OF
SOUTHEASTERN PA, P.C., by:

_____
Roger V. Ashodian
Attorney ID #42586
101 West Chester Pike, Suite 1A
Havertown, PA  19083
(610) 446-6800

<u>Attorney for Debtor</u>